## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS

EMMETT SPOONER                                              NO. 00-0145-JJB-DLD

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 20, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

EMMETT SPOONER                                                    NO. 00-0145-JJB-DLD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion by the defendant, Emmett Spooner, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The government has filed an opposition. There is no need for oral argument or for an evidentiary hearing.[1]

In September, 2000, the defendant was indicted on three counts of wire fraud and three counts of mail fraud, violations of 18 U.S.C. §§ 1341 and 1343. He pled not guilty and was provided with an appointed public defender. Both through counsel and pro se, the defendant then filed numerous motions, including motions to suppress evidence, to dismiss the indictment and/or strike portions of same, and to seek a mental evaluation to determine both his competency to stand trial and his sanity at the time of the offenses. Following mental evaluations of the defendant and an evidentiary hearing addressed to these issues on June 18, 2001, the defendant's motions to dismiss the indictment were denied, and he was determined by the Court to be competent to proceed to trial. See rec.doc.no. 55.

On July 12, 2001, the defendant filed a motion to represent himself. After a hearing conducted on July 16, 2001, at which the Court repeatedly warned the defendant about the risks associated with self-representation and counseled the defendant regarding the rights which he was

---

[1] The defendant has also filed a motion for summary judgment, rec.doc.no. 286, addressed to the issues in this case.

foregoing by representing himself, and after the defendant re-submitted his motion in proper form, the Court granted the motion and allowed the defendant to proceed pro se.

After being allowed to proceed pro se, the defendant filed numerous and varied additional motions, including motions to dismiss the indictment, to suppress evidence, to strike duplicitous counts from the indictment, to appoint expert witnesses, to change venue, and to return property seized at the time of his arrest.  After an evidentiary hearing conducted on October 9, 2001, the Court ruled on many of the defendant's motions, rejecting most, and deferred ruling on the defendant's motion to suppress evidence.  During the hearing, the Court again repeatedly urged the defendant to seek the assistance of counsel, and the defendant again rejected this advice.

Finally, at a status conference held on December 6, 2001, the trial court ruled on several pending motions, ultimately denying the defendant's motion to suppress evidence.  In addition, the Court granted a request by the defendant to appoint counsel, not to represent the defendant at trial, but solely to assist the defendant as a legal advisor during trial.

After a jury trial conducted between December 10 and 14, 2001, the defendant was found guilty on all counts.  At the request of the defendant, the Court then appointed Anthony Bertucci, the attorney who had assisted the defendant at trial, to represent the defendant with post-verdict motions and with his appeal.  Upon the publication of the defendant's Presentence Report ("P.S.R.") in February, 2002, and revision thereof in May, 2002, the Court thereafter sentenced the defendant to six (6) concurrent terms of thirty-three (33) months in confinement, together with three (3) years of supervised release, a special assessment of $600.00 and restitution in the amount of $29,198.00.

The defendant, through his appointed counsel, appealed his convictions and sentences and, on December 11, 2003, the United States Court of Appeals for the Fifth Circuit affirmed the convictions but remanded for re-sentencing upon a finding, relative to the enhancement an the defendant's sentence for providing misleading information to his probation officer during preparation

of the P.S.R., that the record did not reflect that the allegedly misleading information "misled the probation officer in a manner that has traditionally been the basis for ... enhancement" under the sentencing guidelines.  United States v. Spooner, 83 Fed.Appx. 626 (2003).  After an evidentiary hearing conducted on March 1, 2004, the trial court imposed the same sentences as had been previously imposed.

The defendant again appealed the trial court's determination.  On December 16, 2004, the Fifth Circuit affirmed the defendant's sentences.  United States v. Spooner, 117 Fed.Appx. 357 (5th Cir. 2004).

On November 30, 2005, the defendant filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and, as amended, asserted 43 enumerated claims. These claims are rambling, interrelated and overlapping and can be grouped into categories as discussed below.

<u>Factual Background</u>

The basis for the charges against the defendant stem from his "representation" of three (3) persons involved in separate automobile accidents in Baton Rouge, Louisiana.  The defendant, who was not and is not authorized to practice law in the State of Louisiana, entered into agreements with these persons pursuant to which he agreed to act as their representative in seeking compensation for injuries allegedly sustained by them in the accidents.  Pursuant to these agreements, the defendant contacted the respective insurance companies of the alleged tortfeasors, advised them that he "represented" the respective claimants, and entered into negotiations for settlement of the respective claims.  In furtherance of these negotiations, the defendant sent medical narrative summaries to the insurance companies.  These summaries were written on the letterhead of a physician who had provided medical treatment to each claimant, but the summaries were shown at trial not to have been authored or prepared by the physician or by his office.  In addition, each of the medical narrative summaries contained false and exaggerated statements regarding the

treatment provided and the diagnoses arrived at by the physician, including false statements regarding the number of office visits attended by the claimants, the symptoms exhibited, the medical histories recounted, the recommended courses of treatment, and the diagnoses arrived at. In at least one case, the defendant sought reimbursement in the amount of $250 for preparation of the medical "report".  And in another, the defendant forwarded correspondence, purportedly signed by the claimant's employer, which stated that the claimant had missed three weeks of work which, based on the employer's testimony at trial, he had not.  Based principally upon the documentation forwarded by the defendant, the respective insurance companies forwarded checks in payment of the claimants' demands, made out jointly to the respective claimants and to the defendant.

Legal Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  United States v. Cervantes, 132 F.3d 1106 (5th Cir. 1998).  "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  Id.  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  See Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).

In the defendant's first assertion, variously presented in claims one, eleven, twelve and thirty-six of his application, the defendant contends that his court-appointed attorney provided

ineffective assistance during events prior to and leading up to the defendant's motion to represent himself.  The defendant principally asserts relative to this claim that he was denied due process of law because his appointed counsel failed to conduct an adequate investigation, failed to pursue a motion to suppress evidence -- which evidence, according to the defendant, was obtained during an alleged illegal arrest and search -- failed to "debrief" the defendant after the defendant was granted leave to proceed without counsel, and failed to turn over portions of the research and investigative file to the defendant.

The standard for determining whether a defendant has received effective assistance of counsel within the limits of the Sixth Amendment right to counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In Strickland, the Court recognized that the Sixth Amendment right to counsel is the right to reasonably effective assistance.  The Court established a two-prong test for determining when reversal of a conviction is necessary to protect the defendant's Sixth Amendment right.  "First, the defendant must show that counsel's performance was deficient....  Second, the defendant must show that the deficient performance prejudiced the defendant."  Id. at 687, 104 S.Ct. at 2064.  If the Court finds that either of these elements is not met, it must reject the claim.

In determining whether counsel was deficient, the Court has emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688, 104 S.Ct. at 2065.  The Court should consider all circumstances to determine whether the attorney's conduct was objectively reasonable.  See United States v. Walker, 68 F.3d 931 (5th Cir. 1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996).  Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066.  The test for actual prejudice is whether "there is a reasonable

probability that, but for counsel's unprofessional errors, the result would have been different."  Id. at 694, 104 S.Ct. at 2068.

The Court finds this claim to be without merit.  With regard to the defendant's assertion that his attorney failed to conduct an adequate investigation, the defendant makes the conclusory assertion that his attorney failed to conduct interviews of unnamed witnesses and failed to obtain records from the insurance companies which were allegedly defrauded by the defendant.  There is no support for this assertion in the record.  The defendant has failed to identify any person or persons (other than the government's witnesses and insurance adjusters, all of whom were available on cross-examination) who should have been interviewed or the information which would have been obtained from such interviews.  Further, even if true, the defendant is unable to show prejudice resulting from the asserted failure of counsel.  The defendant was allowed to proceed pro se in July, 2001, almost five months prior to trial.  To the extent that the defendant believed that additional investigation or discovery was necessary upon review of his counsel's file materials, he had ample opportunity to conduct same.  He in fact filed a motion for discovery after his appointed counsel was allowed to withdraw from representation.  See rec.doc.no. 87.  He may not be heard, therefore, to complain of any alleged failure of his attorney in this regard.  This conclusion is further borne out by the determination of the United States Court of Appeals for the Fifth Circuit on direct appeal that the defendant "could have obtained with reasonable diligence information regarding the insurance claims files".

With respect to the defendant's contention that his attorney failed to pursue the defendant's motion to suppress evidence, the Court finds that this claim is also without merit.  Prior to the grant of the defendant's motion to represent himself, his attorney in fact filed a motion to suppress evidence.  Although the defendant and his counsel apparently disagreed regarding the appropriate scope of this motion and/or the manner in which it should be argued, the defendant thereafter sought and obtained permission to proceed pro se and was himself able to pursue this motion to

suppress, in written briefs, in a separately filed pro se motion, and at a hearing conducted on this issue.  There is no legal or factual basis, therefore, for concluding that the defendant's counsel acted deficiently in connection with this issue or that the defendant was prejudiced thereby.

The defendant also makes the conclusory assertion that his counsel failed to "debrief" him after withdrawal from representation and failed to turn over all of the defense file materials, particularly materials relative to the defendant's medical diagnosis of a "probable" bi-polar disorder. However, the defendant points to no specific documents or materials which he contends were withheld by his attorney, and he explicitly concedes that the trial judge directed that all legal research and investigative materials be turned over upon counsel's withdrawal.  In short, the defendant makes no more than a conclusory and unsupported assertion that his file materials were incomplete.  Further, as previously noted, the defendant had time prior to trial within which to seek evidence or documentation which he believed to be missing from his counsel's file or which he believed to have been inadequately investigated.  And the Court finds no legal authority suggesting that, having conferred with the defendant in the months prior to withdrawal and having turned over the research and investigative files to him, the defendant's attorney was required to "debrief" the defendant in some more formal manner.   Accordingly, the Court finds no deficiency in this assertion.

The defendant next contends, in claims two, six, twenty-five[2] and forty, that he was provided with ineffective assistance of counsel at the conclusion of his criminal trial.  In this regard, the record reflects that, after trial, the attorney who had assisted the pro se defendant as an advisor was appointed to represent him as his attorney in post-trial proceedings. The defendant complains, however, that this counsel was thereafter ineffective for failing to adequately investigate prior

---

[2]    There a two claims identified as "25" in the defendant's application, this one of the alleged ineffective assistance of counsel, and a second, addressed infra, of the alleged withholding of information favorable to the accused.

convictions which were utilized to arrive at the defendant's sentence, failing to move for a downward adjustment in the sentence based upon the defendant's diagnosis of a "probable" bi-polar disorder, and failing to move for a new trial.  In addition, the defendant refers to his attorney's history of substance abuse and suggests that such abuse, and the failure of his attorney to disclose same, may have contributed to the alleged ineffective assistance.

Initially, the defendant contends that his post-verdict attorney was deficient for failing to adequately investigate two (2) prior convictions which were utilized by the defendant's probation officer in determining the defendant's criminal history category, one conviction for attempted forgery in 1985 and one for the unauthorized practice of law in 1998.  Whereas the United States Court of Appeals for the Fifth Circuit concluded on direct appeal that, "Spooner has not met his burden regarding his challenge to the use of his prior state convictions in the calculation of his criminal history category [and] accordingly, the district court did not abuse its discretion by relying on the information in the presentence report", the defendant contends that a more thorough investigation by his attorney would have disclosed that these convictions were unconstitutionally obtained.

If a prior conviction has not been held constitutionally invalid, then a district court has the discretion to include the conviction in calculating the sentence.  The burden of proving that such a conviction is constitutionally invalid falls on the defendant.  United States v. Osborne, 68 F.3d 94 (5th Cir. 1995).  In the instant case, the defendant asserts, in wholly conclusory and largely incomprehensible fashion, that with regard to his 1985 felony conviction, he was improperly convicted of "attempted forgery" (whereas he was charged in the indictment only with having committed the principal offense of "forgery"), he was denied expert assistance at trial, and he was provided with ineffective assistance of counsel (and correspondingly was not allowed to represent himself).  And with regard to the 1998 misdemeanor conviction for the unauthorized practice of law, the defendant asserts that he was denied counsel at trial and on appeal.  Notwithstanding his conclusory assertions, however, the defendant has provided nothing to this Court upon which to

base a conclusion that either of these convictions was unconstitutionally obtained or that a more thorough investigation by his attorney would have uncovered such.  The defendant unsuccessfully pursued appeals of both convictions through the Louisiana appellate courts, see, e.g., State v. Spooner, 550 So.2d 1289 (1st Cir. 1989), writ denied, 566 So.2d 394 (La. 1990), and State v. Spooner, 803 So.2d 26 (La. 2001), unsuccessfully pursued state court post-conviction relief with regard to same, and at least with regard to the 1985 conviction for attempted forgery, unsuccessfully sought, on three (3) occasions, habeas corpus relief in this Court, see Spooner v. Bruce Lynn, No. 91-0906-JVP-CN,  Spooner v. State, et al., No. 94-CV-0838-FJP-CN, and Spooner v. Foti, et al., No. 04-0001-JVP-DLD.  In short, notwithstanding numerous attempts, the defendant has never successfully challenged either of these convictions, and there is no basis for concluding that a more thorough investigation by his attorney would have achieved a different result. Accordingly, based upon this conclusion, it is apparent that the defendant's contention in this regard is without merit.

The defendant next contends that his post-trial counsel should have moved for a downward adjustment in the sentence based upon the defendant's "probable" diagnosis of a mildly severe non-specific bi-polar disorder.  In this regard, the United States Sentencing Guidelines provide that "a downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."  A "significantly reduced mental capacity" is defined as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful".  See Application Notes to the Sentencing Guidelines.  A defendant generally bears the burden of proving that he is entitled to a downward departure.  United States v. Riley, 376 F.3d 1160 (D.C. Cir. 2004).

There is nothing in the record suggesting that there is a reasonable probability that, had a downward departure been sought, it would have been granted.  The diagnosis of bi-polar disorder was tentative at best and mild in severity.  The examining mental health experts found the defendant to be competent to proceed to trial, and the district court, after a hearing, found him legally competent to represent himself in a criminal trial lasting several days.  Contrary to the defendant's assertion that his mental impairment negated his intent to commit a crime, his actions leading up to the indictment reflect an intelligent and concerted effort on his part to seek clients, to hold himself out as an attorney, and to present fraudulently exaggerated claims to insurance companies for personal profit.  The defendant represented to the examining experts that he was the author of two legal self-help books, that he successfully engaged in teaching individual claimants how to seek monetary recovery without the assistance of an attorney, and that he had prepared and filed numerous legal briefs in state courts.  These are not the actions of a person who was "significantly" impaired in his mental capacities.  Cf., Gutierrez v. United States, 2005 WL 2265050 (S.D. Tex., Aug. 25, 2005)("[A]ny claim that Gutierrez operated under a significantly diminished capacity is belied by the very nature of his crime and his role in it".); Hatcher v. United States, 1996 WL 33370664 (N.D. Miss., Feb. 15, 1996) ("The actions of the petitioner during the course of the conspiracy do not indicate the presence of a diminished mental state.").  See also United States v. Johnson, 979 F.2d 396 (6th Cir. 1992)(reversing district court's downward departure on the basis of diminished capacity in part because the defendant showed "mental agility in his professional and personal affairs".).  Accordingly, there is no suggestion that the defendant's mental capacity was "significantly reduced" so as to support a downward departure in this case, and there is therefore no reasonable probability that such a departure would have been granted.

The defendant next asserts that his post-trial attorney should have moved for a new trial and that, had he done so, the defendant would have been allowed to present substantial additional evidence regarding (1) moneys which the insurance companies had set in reserve for the

respective claims as well as moneys offered by the insurance companies prior to the defendant's involvement on behalf of the claimants, thereby mitigating the defendant's culpability and sentence, (2) the withholding of exculpatory evidence by the prosecution in violation of Brady v. Maryland, 83 S.Ct. 1194, 373 U.S. 83, 10 L.Ed.2d 215 (1963), and (3) expert analysis to show that the claimants' actual symptoms and injuries were sufficient to support the payments made by the insurance companies even without the defendant's exaggerated and fraudulent misrepresentations. However, in order for the defendant to be successful with this claim, he must show that, had the motion for new trial been presented, there is a reasonable probability that it would have been granted. See Shelton v. Quarterman, 294 Fed.Appx. 859 (5th Cir. 2008). See also United States v. Rosalez-Orozco, 8 F.3d 198 (5th Cir. 1993)("In order to establish prejudice, Rosalez must show that [there was] a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted ...."); Burston v. Caldwell, 506 F.2d 24 (5th Cir.), 421 U.S. 990, 95 S.Ct. 1995, 44 L.Ed.2d 480 (1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was ... no reason to believe that such a motion would be granted").

In the instant case, there is no reason to conclude that a motion for new trial would have been granted. The defendant has neither identified, described nor produced the additional evidence which he asserts would have been placed before the trial court, and as discussed in greater detail later in this Report, this Court finds that much of the purported evidence is irrelevant to the question of the defendant's guilt and therefore finds no basis in the defendant's arguments for finding that a motion for new trial would have been successful. Accordingly, the Court finds no deficiency in the defendant's attorney's failure to file such a motion.

Finally, the defendant contends that his post-verdict counsel had a substance abuse problem and that this problem may have affected the legal representation provided to the defendant. The record does not reflect any factual basis for the defendant's allegations in this

regard.  Independent inquiry by this Court, however, discloses that in 2004, long after the trial of this case, the defendant's attorney was arrested on drug possession charges, at which time he admitted to having a substance abuse problem and ultimately participated in long-term rehabilitation for this problem.  Notwithstanding, the defendant provides no information whatever to suggest that his attorney suffered the same difficulties at the time of the defendant's trial in 2001 or that, even if he did, he was under the influence of alcohol or drugs during his <u>de facto</u> representation of the defendant.  Nor does the defendant point to any deficient performance resulting from potential drug or alcohol use.

Pursuant to <u>Berry v. King</u>, 765 F.2d 451 (5th Cir. 1985), <u>cert. denied</u>, 476 U.S. 1164, 106 S.Ct. 2290, 90 L.Ed.2d 731 (1986), "the fact that an attorney used drugs is not, in and of itself, relevant to an ineffective assistance claim.  The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant."  <u>See also</u> <u>Burnett v. Collins</u>, 982 F.2d 922 (5th Cir. 1993).  The defendant in this case has not shown that his attorney was abusing drugs or alcohol at the time of his representation of the defendant, nor that he was impaired in any way.  Nor has the defendant pointed to any errors made during such representation which may have resulted from the use of alcohol or drugs.  Further, an independent review of the record does not reflect any perceived deficiencies in counsel's performance which may have been caused by drug or alcohol impairment.  Accordingly, the defendant's contentions relative to the alleged ineffective assistance of his post-verdict counsel claim must fail.

The defendant's next contention, asserted in claims three, seven, nine, thirty-eight and forty-two, is that he was denied due process because the trial court erred in allowing him  to represent himself at trial.  In this regard, he asserts that, because of his diagnosis of a mildly severe bi-polar disorder, he was incapable of adequately representing himself.  This claim is without merit.  In the first place, the Fifth Circuit appellate court has already ruled on this issue, having concluded that the defendant "executed a voluntary and knowing waiver of his right to counsel with a full

understanding of the consequences of the waiver".  Further, the record reflects that the defendant underwent two psychological evaluations prior to trial, and the trial court determined at an evidentiary hearing that the defendant was legally competent to proceed to trial.  Although the defendant was found to have a bi-polar disorder of "mild severity", there was no serious question regarding his competency to proceed to trial.  Specifically, the examining mental health expert found that:

> [Spooner] appears to understand the nature of the charge, the seriousness of the charge, the defense available to him, the consequences of a guilty plea or a not guilty plea, his basic legal rights, possible verdicts ... and the consequences of a conviction.  With regard to his ability to assist in his own defense, he appears to be capable of recalling and relating facts pertaining to his actions and whereabouts at certain times, expresses a willingness to assist counsel in locating and examining relevant witnesses or facts, can maintain a consistent defense, appears capable of listening to testimony or witnesses and inform his attorney of any distortion or misstatements, and has the ability to make simple decisions in response to well explained alternatives.  He also appears to be capable of testifying in his own behalf.

Whereas the defendant had the absolute right to representation by counsel at his criminal trial, it is equally true that he had the right to waive such counsel and represent himself.  United States v. Kizzee, 150 F.3d 497 (5th Cir. 1998).  The trial judge assured himself in open court that, despite stern and repeated admonition, and notwithstanding a thorough explanation of both the risks of self-representation and the rights which the defendant was foregoing by proceeding without counsel, the defendant wished to represent himself.  Moreover, the trial judge advised the defendant on multiple occasions thereafter that counsel was strongly recommended, and the defendant repeatedly elected to disregard this advice.  Finally, the trial court exercised its discretion and appointed an attorney to sit beside the defendant and act as his adviser at trial.  It is axiomatic, therefore, that inasmuch as the defendant had the constitutional right to waive counsel, and inasmuch as he was found to be legally competent to proceed, he possessed the ability to exercise his right and proceed without counsel.  This he did, and this claim, therefore, is without merit.[3]

---

[3]     A claimant may not be allowed to waive counsel and then be heard to assert that his own self-representation resulted in ineffective assistance of counsel at trial.  Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The defendant next contends, in claims four[4], fourteen, twenty-two and thirty-seven of his application, that the prosecution presented false and/or misleading evidence and argument in its opening statement and in testimony thereafter elicited from a witness, Laura Chambers, which the prosecution knew to be false. Specifically, the defendant points to the prosecution's opening statement, wherein a representation was made to the jury that the claim of Ms. Chambers (who had retained the defendant to "represent" her in connection with injuries received in a motor vehicle accident) was utilized by the defendant to fraudulently present to the insurance company a claim of an asserted re-injury of a pre-existing ankle injury and surgery and to thereby falsely augment the claim.  Consistent with this opening statement, testimony was thereafter adduced from Ms. Chambers (whose claim was not made a part of the indictment other than to provide evidence of the defendant's intent, plan or scheme) to the effect that she had informed both the defendant and her treating physician that there was no re-injury to her ankle and no link between the motor vehicle accident and any ankle pain which she exhibited. This assertion was thereafter further corroborated by testimony elicited from the treating physician, who similarly noted that Ms. Chambers had not claimed to have injured or re-injured her ankle in the motor vehicle accident.  The evidence further reflected that, notwithstanding this testimony, the defendant subsequently forwarded correspondence to the insurance company (on the physician's letterhead and seemingly authored by the physician) wherein a claim of a re-injured ankle was asserted.  The defendant argues that, because the physician was shown to have in fact provided some treatment to Ms. Chambers for ankle soreness and because the physician ultimately noted at some point in his records that her ankle may have been aggravated by the accident, this established material falsehood in the prosecution's case which warranted a mistrial and/or was proof of prosecutorial misconduct in the presentation of Ms. Chambers' claim.

---

[4]        There a two claims identified as claim "4" in the defendant's application, this one of alleged prosecutorial misconduct in the presentation of false and/or perjured testimony, and a second, addressed infra, of allegedly insufficient jury charges.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).  See also Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).  To find a violation of due process, the defendant must show that (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false.  Id.  False evidence is material only if there is a reasonable likelihood that it could have affected the jury's verdict.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  Id. (emphasis added).  Perjury is material, and a new trial is required, if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"  Kirkpatrick v. whitley, 992 F.2d 491 (citing United States v. Agurs, supra).  See also Giglio, supra, 405 U.S. at 154, 92 S.Ct. at 766.

Undertaking this analysis with respect to the defendant's claim of the prosecutions's alleged wrongful presentation of false and/or perjured testimony, the Court finds no basis in fact or law for the defendant's contention.  Both Ms. Chambers and her physician testified, consistently with the representations made in the opening statement, that she neither injured her ankle in the motor vehicle for which the defendant was assisting her nor advised the defendant or her physician that she had done so.  That she may have thereafter received some treatment from her physician for ankle soreness unrelated to the motor vehicle accident does not establish any direct falsity in the testimony given.  Further, in the Court's view, the noted discrepancy amounts to no more than a minor variation in the evidence, and it is not dispositive of the defendant's claim that the physician

may have subsequently noted in his records that the motor vehicle possible aggravated her ankle pain after Ms. Chambers reported to him that her ankle had been "aching since [the] auto accident." And in any event, this discrepancy cannot be seen to be material in the sense that it "could have affected the judgment of the jury."  In this prosecution for mail and wire fraud, the defendant's relevant conduct was the preparation and submission of correspondence, seemingly authored by an objective non-partisan physician but in fact authored by the defendant or his office and falsely submitted on the physician's letterhead, which exaggerated and misrepresented the nature and extent of the claimants' injuries.   In the letter written on behalf of Ms. Chambers, the defendant falsely represented to the insurance company that Ms. Chambers had reported, to both the defendant and to her physician, that she had re-injured her ankle in the motor vehicle whereas, according to her testimony and that of her physician, she had made no such representation.  The letter further falsely represented that Ms. Chambers suffered injury and "contusions" to her right hand which she and her physician both testified that she had not.  These types of false assertions are repeated in letters sent by the defendant to insurance companies in connection with the demands of the other motor vehicle claimants.  It is not conceivable, therefore, that the noted discrepancy relative to Ms. Chamber's subsequent treatment of her ankle could have affected the jury's ultimate conclusion that the defendant engaged in a scheme to fraudulently misrepresent the respective claims of his clients.  Accordingly, this claim is without merit and must be rejected.

In a similar claim, asserted in claims five, twenty, twenty-three and twenty-five[5] of his application, the defendant complains that the prosecution withheld evidence favorable to the accused in violation of Brady v. Maryland, 83 S.Ct. 1194, 373 U.S. 83, 10 L.Ed.2d 215 (1963).  In this regard, the defendant asserts that the prosecution was in possession of records reflecting the falsity of the testimony of witness Laura Chambers (as discussed above), and that there were documents in the prosecution's files and in the files of the respective insurance companies which reflected that the companies (1) had placed on reserve funds for the payment of the respective

---

[5]        See note 2, supra.

claimants' demands, (2) had made partial payments and/or offers of moneys in proposed satisfaction of those claims prior to the defendant's involvement on their behalf, and (3) had reviewed medical information relative to the claims which predated the defendant's involvement, thereby negating the prosecution's claim that the defendant had perpetrated any fraud on the companies in seeking moneys from them.

Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution's suppression of evidence that is both favorable to the accused and material to either guilt or punishment violates due process, regardless of whether or not the prosecution acted in good faith or bad faith in failing to make a timely disclosure of the evidence.  Id.  373 U.S. at 87, 83 S.Ct. at 1196; Jones v. Butler, 864 F.2d 348 (5th Cir. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).  Thus, to establish a Brady claim, the defendant must show that (1) the prosecution suppressed evidence, (2) the suppressed evidence was "favorable to the accused" (3) the evidence was "material" either to guilt or punishment.  See, e.g., Brogdon v. Butler, 790 F.2d 1164 (5th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 3245, 97 L.Ed.2d 749 (1987).  Evidence that is "favorable to the accused" includes evidence that tends directly to exculpate the accused as well as evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence.  Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Poretto v. Stalder, 834 F.2d 461 (5th Cir. 1987).  The question of materiality is one of a "reasonable probability" of a different result.  Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  Id.

The Court finds that the defendant's claims are conclusory at best and are not supported by the record.  Whereas he asserts that he should have been provided with complete copies of the insurance company files prior to trial, any failure in this regard is not grounds for relief.  As found by the Fifth Circuit on direct appeal, "[t]he record shows that Spooner could have obtained with

reasonable diligence information regarding the insurance claims files (citation omitted)." Moreover, it appears from the record that the insurance adjusters who testified at the defendant's trial had their files with them as they testified, and that the defendant had a full and complete opportunity to question them regarding the contents thereof.   Each of these adjusters testified that they had evaluated the respective claims and arrived at settlement figures based principally, if not entirely, upon the misleading, exaggerated and fraudulent information provided by the defendant.  There is nothing to support the defendant's assertion that there was other information or exculpatory information in the files or that the prosecution intentionally withheld such information from him. Moreover, with regard to the defendant's unsupported allegation that certain payments may have been made or offered prior to his involvement in the claims, or that reserves were established on the claims prior to such involvement, the Court fails to see in what manner this information, even if true, could be seen to be exculpatory or material to his defense.  The evidence at trial showed that the defendant provided exaggerated, falsified and untruthful information to the respective insurance companies, that this information was presented in correspondence made to look as though it were authored by a physician, and that payments were made by the companies based principally upon the receipt and evaluation of this fraudulent information.   The mere fact that the companies may have established reserves on the unevaluated claims prior to receipt of information from the defendant in no way alleviates the criminality of the defendant's conduct.  Accordingly, the Court finds that this claim is without merit.

In claim eight of his application, the defendant challenges, on constitutional grounds, the Fifth Circuit procedural rule which prohibits consideration of an issue raised for the first time in a reply brief.  In this regard, he complains of the appellate court's refusal to consider his claim, asserted in his reply brief on direct appeal, that his post-trial attorney rendered ineffective assistance of counsel during sentencing proceedings.  This constitutional attack upon a procedural rule is wholly without merit.  Further, the defendant has suffered no prejudice by application of the referenced rule because, although he complains that this rule precluded full and complete

consideration of his claim of ineffective assistance of counsel on direct appeal, this Court has now addressed and considered this claim in the present application, and the defendant will presumably be entitled to a review thereof on appeal from this Court's determination.  Accordingly, this claim should be rejected.

In claims ten and thirty-five of his application, the defendant complains that the trial court erred in denying his requests for expert assistance.  In this regard, the defendant contends that he sought experts to testify before the jury both as to the effect of his bi-polar diagnosis and as to the manner in which insurance companies evaluate and settle claims.  With regard to the former, the record does not reflect that the defendant (1) ever sought an expert to testify regarding the effect of his bi-polar diagnosis, (2) provided notice to the prosecution that he intended to present a defense of diminished capacity as required by Rule 12.2 of the Federal Rules of Criminal Procedure, (3) sought to introduce evidence of such diminished capacity, or (4) requested instructions to the jury regarding the potential effect of his bi-polar diagnosis.  He may not complain, therefore, of any failure of the Court to grant him that which he did not request.  And with regard to the trial court's denial of the defendant's motion for an expert witness to testify regarding the manner in which insurance claims are evaluated and settled, this issue was asserted and rejected in connection with the defendant's direct appeal, with the Fifth Circuit finding both that the defendant "has not shown that the district court erred by denying his motions for expert witnesses", and "did not demonstrate more than the mere possibility of assistance from a requested expert." See Moore v. Johnson, 225 F.3d 495 (5th Cir. 2000), cert. denied, 532 U.S. 949, 121 S.Ct. 1420, 149 L.Ed.2d 360 (2001).  Inasmuch as an issue which has been addressed on appeal is not open to consideration in a § 2255 proceeding, United States v. Webster, 392 F.3d 787, 791, note 5 (5th Cir. 2004); United States v. Perez, 129 F.3d 255 (2nd Cir. 1997), cert. denied, 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998), it is appropriate that this claim be rejected.

In claims thirteen and twenty-eight of his application, the defendant complains that his motions to suppress evidence were improperly denied and that evidence which was illegally seized

from his motor vehicle at the time of his arrest was improperly utilized against him at trial.  This claim, however,  was asserted and addressed on direct appeal, with the appellate court finding that the trial court did not err in rejecting the defendant's motion to suppress this evidence.  Specifically, the appellate court found that the defendant had failed to adequately present his claim of an improper arrest, and the court made reference to the "plain view" exception to the warrant requirement, finding that, after the defendant's arrest, "[t]he officer validly entered the vehicle pursuant to a community caretaking function to secure it and to prevent damage or theft of Spooner's property".[6]  The appellate court further concluded that, "an officer may seize an item if there is a 'practical, nontechnical probability that incriminating evidence is involved."  Finally, the appellate court found that the defendant had failed to show, in any event, that any alleged error arising from the seizure of the evidence was not harmless.  Accordingly, considering that an issue which has been addressed on appeal is not open to consideration in a § 2255 proceeding, United States v. Webster, supra; United States v. Perez, supra, it is appropriate that this claim be rejected.[7]

In claims fifteen, thirty-one, thirty-two, thirty-three and forty-three of his application, the defendant challenges the grand jury indictment entered against him and asserts a claim of

---

[6]      With regard to the issue of the defendant's arrest, the trial court found that the arresting officer had probable cause to believe that the defendant had committed a violation of La. R.S. 37:213, which prohibits the unauthorized practice of law.  In this regard, the court found that the arresting officer had been advised by a local law firm that the defendant "had represented himself as an attorney on behalf of an auto accident victim", and documents produced by the insurance company "showed numerous representations by the defendant on behalf of the victim ..., including a faxed 'letter of representation.'" The officer further received information from the law firm that the defendant and his "client" were to appear at the attorney's office on the date of the arrest to effect a settlement and to receive a check in payment of the claim.  The officer observed the defendant and his "client" enter and depart the attorney's office, and he observed them subsequently travel to a nearby check-cashing location where they conducted business inside the establishment.  Based on this information, the officer believed that he had probable cause to arrest the defendant, and the trial court agreed that the arrest was valid.

[7]      To the extent that the defendant may seek to look to the recent United States Supreme Court decision in Arizona v. Gant, _____ U.S. _____, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which altered the analysis applicable to vehicle searches after arrest, this case has not been made retroactive to cases on collateral review.  See United States v. Brown, 2009 WL 1605634 (D.S.C. June 5, 2009)("The United States Supreme Court has not made Gant retroactive to cases on collateral review.  "[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive.'")

irregularities in the grand jury proceedings.  He asserts first that the indictment essentially charged him with a violation of state law, i.e., the unauthorized practice of law, and failed to adequately assert mail and wire fraud violations.  In addition, he complains that the prosecution was allowed to amend the indictment to reflect that his name is "Emmett Spooner" and not "Emmett Spooner, Jr.", as originally stated therein.  This claim is without merit.  The indictment clearly and explicitly charged the defendant with violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, and the indictment directly tracked the language of these statutes.  There is no suggestion in the indictment that the defendant was being charged with any state law violation, and the mere mention in the indictment that the defendant was not licensed to practice law was surplusage and did not convert the government's charge into one for the unauthorized practice of law.  Further, the Fifth Circuit on direct appeal has concluded that "the indictment sufficiently informed Spooner of the charges against him," and further concluded that the district court did not err by denying the defendant's motion to dismiss the indictment.  Thus, as with so many of the defendant's claims, this assertion was raised on direct appeal, and the appellate court rejected same, finding that the indictment was not deficient and explicitly concluding that the indictment was not improperly amended prior to trial to reflect the defendant's correct name.

The defendant also complains of alleged irregularities in the grand jury proceedings.  This claim, however, is conclusory at best and is entirely unsupported by anything in the record.  Without support or corroboration, the defendant asserts variously that the grand jury indictment "was not concurred on by the majority of grand jurors", that the grand jurors did not sit for the required time as a panel, that the indictment was improperly prepared by the United States Attorney prior to review by the foreman or agreement by the entire venire, and that there was adverse publicity which resulted in prejudice.  This claim is wholly without merit.  There is nothing in the record to support the defendant's contention that there were any irregularities in the grand jury proceedings, and as previously noted, and as found by the Fifth Circuit on appeal, the indictment was clear that the

offenses charged against the defendant related not to his unauthorized practice of law but to his use of the mail and wire services to pursue a fraudulent scheme.

In claims sixteen and twenty-four of his application, the defendant complains that he was not allowed to recall two witnesses who he believed should have been subjected to further questioning.  This claim, however, was also presented on direct appeal, and the Fifth Circuit rejected same, concluding that "the record refutes Spooner's contention that the district court refused to allow him to recall government witnesses Page and Richards."  In fact, the defendant concedes in brief that "the court did not openly object to the witnesses returning," and the record confirms that the trial judge did not preclude the defendant from re-subpoenaing these witnesses but merely encouraged the defendant to refrain from doing so in light of the judge's stated belief that any additional testimony would likely be irrelevant.  The defendant complains, however,  that the district court nonetheless should have allowed a continuance or a delay in the ongoing trial for the purpose of re-serving and re-calling these witnesses.  Notwithstanding, it is apparent that the defendant had ample opportunity to question these witnesses on cross-examination, and there is no showing relative to what testimony may have been elicited which could have altered the outcome of the trial.  Accordingly, upon a finding by this Court that the trial court did not err in denying a delay or continuance of the trial, and further, that the defendant's claim in this regard has been addressed and rejected in any event on direct appeal, the defendant's claim must be rejected.

In claims four[8], seventeen[9] and forty-one of his application, the defendant complains that the jury instructions were deficient because they did not include any information for the jury to consider relative to the nature of his alleged "fiduciary relationship" with his clients "and how said relationship related to the material element of intent and to the offense of mail fraud."  In addition, the defendant complains that the jury instructions should have included information addressing the

---

[8]      See note 4, supra.

[9]      There a two claims identified as "17" in the defendant's application, this one of alleged deficient jury charges, and a second, addressed infra, of the trial court's alleged failure to properly calculate the defendant's criminal history for sentencing purposes.

possible effect of his bi-polar disorder and should have included repeated iterations of the elements of wire and mail fraud in the context of each count of the indictment.  The Court finds no merit in these assertions.  First, the record does not reflect that the defendant submitted any proposed jury charges for consideration by the trial judge relative to his supposed fiduciary relationship or his bi-polar disorder, and in contrast, the record reflects that the defendant offered no objection to the charges prepared and submitted by the trial judge.  Record on Appeal, Vol. 13, p. 85.  Further, as explicitly found by the Fifth Circuit on direct appeal, "Spooner has not demonstrated that the charge as a whole was deficient and resulted 'in a likelihood of a grave mistake of justice,' nor has he shown that any omission in the jury charge affected his substantial rights."  (Citations omitted.) Finally, although the Fifth Circuit explicitly declined to address the defendant's contention regarding his alleged fiduciary relationship with his clients, the defendant's argument in this regard is not only incomprehensible, but this Court fails to see in what manner the defendant's fiduciary relationship with his clients may be seen to have justified his actions in providing false, exaggerated and fraudulent claims to the respective insurance companies on the claimants' behalf.  Accordingly, the Court sees no legal or factual basis for inclusion in the jury charges of information relative to such fiduciary relationship, and this claim should be rejected.

In claims seventeen (duplicated), twenty-seven, thirty and thirty-nine of his application, the defendant complains that, during sentencing proceedings, the district court improperly relied upon prior convictions which had been obtained in violation of his constitutional rights.  This issue was previously addressed in the context of the defendant's claim of ineffective assistance of counsel. Again, however, this issue was raised and argued on direct appeal, and the Fifth Circuit explicitly rejected same, finding that "Spooner has not met his burden regarding his challenge to the use of his prior state convictions in the calculation of his criminal history category."  As a result, the Court ruled that, "the district court did not abuse its discretion by relying on the information in the presentence report [regarding these convictions]."

In claim eighteen of his application, the defendant challenges that part of his sentence which included the payment of full restitution to the defrauded insurance companies.  The defendant contends that the insurance companies were not technically "victims" inasmuch as they had, prior to the defendant's involvement in the cases, established reserves and thereby determined that they would make some settlement disbursement to the claimants in the respective cases.  Accordingly, the defendant argues that the companies were not harmed by his involvement and are not entitled to return of the moneys.  Further, the defendant suggests that, inasmuch as the claims of his respective clients had independent value which the insurance companies were obligated to pay regardless of any fraudulent inflation thereof by his actions, he should not be assessed restitution in the full amount of the settlement figures arrived at but only at a lesser amount.  This claim is not properly before the Court.  Pursuant to United States v. Hatten, 167 F.3d 884 (5th Cir. 1999), "complaints concerning restitution may not be addressed in § 2255 proceedings."  See also Campbell v. United States, 2009 WL 1472217 (5th Cir. 2009)("A challenge to the restitution ... portion of a sentence is a nonconstitutional issue relative to sentencing that should be raised on direct appeal ....  A district court lacks jurisdiction to modify a restitution order under § 2255 ....  Further, a monetary penalty is not a sufficient restraint on liberty to meet the 'in custody' requirements of § 2255 ....").  Accordingly, this claim must be rejected.

In claims nineteen and twenty-one of his application, the defendant contends that the evidence was insufficient to support his convictions.  This claim, however, was raised on direct appeal and decided adversely to the defendant.  Specifically, the Fifth Circuit held that "[t]he Government produced sufficient evidence that Spooner induced insurance companies to mail or to deliver by private carrier, checks as settlement for claims in execution of a scheme to obtain money based on false representations."  Accordingly, inasmuch as this claim has been addressed and resolved on direct appeal, it is appropriate that the claim be rejected.

In claim twenty-six of his application, the defendant complains that evidence in the form of checks written out jointly to him (as "lawyer") and to his respective clients were wrongly admitted

at trial.  This claim is without merit.  Not only is this a claim of non-constitutional dimension which could have and should have been raised on direct appeal, but there can be no serious question that these checks were properly admissible to show the culmination of the defendant's fraudulent scheme to obtain moneys from the respective insurance companies on behalf of his clients.

In claim twenty-nine of his application, the defendant asserts, without argument or authority, that the trial court misapplied the sentencing guidelines and sentenced him to a total of 69 months (including his supervised release period) whereas the guidelines specified only a 60-month sentence.  There is no support for this contention whatever.  Further, the law is clear that a district court's technical application of the sentencing guidelines does not give rise to a constitutional issue cognizable under § 2255.  See United States v. Segler, 37 F.3d 1131 (5th Cir. 1994).  Moreover, it does not appear that this claim was raised on direct appeal, and a non-constitutional claim that could have been raised on direct appeal, but was not, may not be raised in a collateral proceeding. Id.  Accordingly, the defendant's claim in this regard must fail.

Finally, in claim thirty-four of his application, the defendant complains that the probation officer assigned to prepare his pre-sentence investigation report failed to conduct a "full and material investigation" into the defendant's appropriate criminal history.  Specifically, the defendant complains of the probation officer's consideration of his 1985 conviction of attempted forgery in Iberville Parish, which he contends was an unconstitutional conviction and therefore should not have been considered.  As previously noted above, however, the Fifth Circuit has considered this assertion and concluded that the defendant "has not met his burden regarding his challenge to the use of his prior state convictions in the calculation of his criminal history category [and] accordingly, the district court did not abuse its discretion by relying on the information in the presentence report." Further, as previously discussed above, the defendant has not shown this Court that the referenced conviction were unconstitutionally obtained.  Accordingly, the defendant's claim in this regard is without merit.

Based upon the foregoing, the Court concludes that the defendant has failed to establish that the violation of his constitutional rights in connection with his convictions and sentences. Therefore, the defendant is not entitled to relief under 28 U.S.C. § 2255, and his application should be denied.

RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendant's motion for summary judgment be denied and that his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on July 20, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**